UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JONATHON M. CRILL,

               Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

               Defendant.

No. 2:15-cv-0063-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT are cross-Motions for Summary Judgment. (ECF No. 9, 12.) Attorney Lora Lee Stover represents plaintiff; Special Assistant United States Attorney Courtney Garcia represents defendant. After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** plaintiff's Motion for Summary Judgment (**ECF No. 9**) and **DENIES** defendant's Motion for Summary Judgment. (**ECF No. 12**.)

## JURISDICTION

Plaintiff Jonathon M. Crill (plaintiff) protectively filed for supplemental security income (SSI) and disability insurance benefits (DIB) on February 27, 2012. (Tr. 233, 261.) Plaintiff alleged an onset date of April 1, 2006. (Tr. 233.) Benefits were denied initially and on reconsideration. (Tr. 146, 149, 155, 158, 160, 165.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Jo Hoenninger on January 31, 2014. (Tr. 42-96.) Plaintiff was represented by counsel and testified at the hearing. (Tr. 75-88.) Vocational expert Daniel McKinney and medical experts William F. Spence, MD, and Jay Toews, Ph.D., also testified. (Tr. 52-74, 88-94.) The ALJ denied benefits (Tr. 21-34) and the Appeals Council denied review. (Tr. 1.) The matter is now before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, the ALJ's decision, and the briefs of plaintiff and the Commissioner, and will therefore only be summarized here.

Plaintiff was born October 13, 1963 and was 50 years old at the time of the hearing. (Tr. 75.) He has a GED. (Tr. 77.) He served in the army. (Tr. 77.) He has vocational training and work experience as a truck driver. (Tr. 78.) He has a certificate from a culinary school but could not handle the pressure of the food tickets. (Tr. 78-79.) He testified that April 2006 was the last time he worked as a truck driver. (Tr. 79.) He left his job as a truck driver because he was not doing his job like he was supposed to. (Tr. 85.) He was not concentrating very well and caused other people to be in danger. (Tr. 85.) Plaintiff testified he cannot work mainly because he cannot handle stress. (Tr. 80.) When he gets stressed he gets hot flashes, gets nervous and edgy, and becomes confused. (Tr. 84.) He has posttraumatic stress disorder related to the death of his child. (Tr. 83.) He has to use the restroom a lot. (Tr. 80.) His digestive system has not been the same since gall bladder surgery in 2007. (Tr. 80-81.) He sees a counselor every other week. (Tr. 81.) He has depression. (Tr. 81.) At the time of the hearing, he had been sober from alcohol for a year. (Tr. 82.) He takes medication to stop from drinking. (Tr. 87.) If he does not take his medication he has full blown panic attacks and cannot breathe. (Tr. 87.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir.

1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Sec'y of Health and Human Serv.*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Serv.*, 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a plaintiff shall be determined to be under a disability only if his impairments are of such severity that plaintiff is not only unable to do his previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii),

416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984). If the Commissioner does not meet that burden, the claimant is found to be disabled. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

However, a finding of "disabled" does not automatically qualify a claimant for disability benefits. *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). When there is medical evidence of drug or alcohol addiction, the ALJ must determine whether the drug or alcohol

addiction is a material factor contributing to the disability. 20 C.F.R. §§ 404.1535(a), 416.935(a). In order to determine whether drug or alcohol addiction is a material factor contributing to the disability, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped using drugs or alcohol, then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. §§ 404.1535(b)(2), 416.935(b)(2). If the remaining limitations would not be disabling, drug or alcohol addiction is a contributing factor material to the determination of disability. *Id.* If the remaining limitations would be disabling, the claimant is disabled independent of the drug or alcohol addiction and the addiction is not a contributing factor material to the disability determination. *Id.*

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date. (Tr. 23.) At step two, the ALJ found plaintiff has the following severe impairments: depression; post-traumatic stress disorder/anxiety disorder; substance addiction disorder; and personality disorder. (Tr. 24.) At step three, the ALJ found that when using alcohol, plaintiff's impairments meet listings 12.04, 12.06, 12.08 and 12.09 of 20 C.F.R. Part 404, Subpt. P, App. 1. Thus, plaintiff was presumptively disabled.

However, because there is evidence of substance addiction, the analysis continued. The ALJ then found that if plaintiff stopped the substance use, plaintiff would not not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 28.) The ALJ then determined:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: no climbing of ladders, ropes, and scaffolds; should avoid heights and pulmonary irritants (such as fumes, odors, dust, and gases); can

understand and remember simple instructions and complete simple routine tasks; should have only occasional, superficial, brief interactions with supervisors and co-workers; should not deal with the general public; should not work in an environment where he must make critical calls in the workplace; should not be in a job requiring a high degree of accuracy; can maintain a normal production pace and perform adequately; should have no over-the-shoulder supervision; and should have ready access to the restroom.

(Tr. 28.) At step four, the ALJ found plaintiff would not be able to perform past relevant work, even if plaintiff stopped substance use. (Tr. 32.) After considering plaintiff's age, education, work experience, residual functional capacity, and the testimony of a vocational expert, the ALJ determined that if plaintiff stopped the substance use, there would be a significant number of jobs in the national economy that plaintiff could perform. (Tr. 33.) The ALJ determined substance use disorder is a factor material to the determination of disability because plaintiff would not be disabled if he stopped the substance use. (Tr. 34.) Thus, because the substance use disorder is a contributing factor material to the determination of disability, the ALJ concluded plaintiff has not been disabled with the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision. (Tr. 34.)

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, plaintiff asserts the ALJ: (1) improperly rejected the Veteran's Administration disability rating; (2) improperly evaluated the medical and psychological opinion evidence; (3) failed to provide clear and convincing reasons for the negative credibility finding. (ECF No. 9 at 14-18.) Defendant argues the ALJ: (1) reasonably found plaintiff not entirely credible; (2) properly resolved the medical evidence; and (3) properly discounted the VA disability rating. (ECF No. 12 at 7-20.)

**DISCUSSION**

**1.    Credibility**

Plaintiff argues the ALJ's credibility assessment is harmful error warranting reversal. (ECF No. 9 at 17.) In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of his pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan*

*v. Apfel*, 169 F.3d 595, 601-02 (9th Cir. 1999). A negative credibility finding must be supported by "specific, clear and convincing" reasons when there is no evidence of malingering. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

The ALJ found plaintiff is generally credible concerning his symptoms and limitations while using alcohol heavily. (Tr. 25.) However, the ALJ also found that if plaintiff stopped the substance use, his statements concerning the intensity, persistence and limiting effects of his symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment. (Tr. 29.)

One reason cited by the ALJ in support of the credibility finding is that plaintiff's daily activities show fewer limitations than alleged. (Tr. 29.) Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, a claimant need not be utterly incapacitated in order to be eligible for benefits. *Id.* Many activities are not easily transferable to what may be the more grueling environment of the workplace, where it might not be possible to rest or take medication. *Id.* Yet daily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ pointed out that when plaintiff was not using alcohol heavily, medical providers told him to exercise more and start a job search. (Tr. 29, 436, 438, 445.) The ALJ observed that even when plaintiff was drinking heavily in 2009, Dr. Doyle believed he could quit alcohol and find a job. (Tr. 30, 478-79.) These medical notes do not undermine plaintiff's allegations of anxiety, depression and stress. First, plaintiff's physical ability to exercise has little to do with the mental limitations alleged. Second, a doctor's

opinion that plaintiff "should find a job" (Tr. 478) is not determinative of nondisability, 20 CFR § 404.1527(d)(1), and is unrelated to plaintiff's daily activities. Third, the ALJ found plaintiff's testimony regarding limitations while consuming alcohol before 2011 to be generally credible, which contradicts the implication that Dr. Doyle's 2009 statement that plaintiff "should find a job" means plaintiff was capable of working. As a result, this evidence does not show that plaintiff's daily activities exceed his alleged limitations.

As further evidence of daily activities inconsistent with plaintiff's alleged limitations, the ALJ noted plaintiff reported spending time caring for his mother-in-law. (Tr. 30, 418.) The ALJ also pointed out that in May 2012, plaintiff reported he could shop, cook, drive and clean. (Tr. 30, 676.) However, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). The ALJ did not explain how these activities are inconsistent with the limitations in concentration and public interaction alleged. The ALJ cited no evidence suggesting that these activities were performed by plaintiff in a manner transferable to a work setting, particularly with regard to the limitations caused by stress, panic, anxiety and depression alleged by plaintiff. *See Orn*, 495 F.3d at 639. Therefore, this is not substantial evidence supporting the ALJ's reasoning.

The ALJ also pointed out plaintiff started an on-line business, suggesting this activity reflects plaintiff is more capable than alleged. (Tr. 30, 665, 712.) However, plaintiff reported that he "has been trying to start an internet business, marketing, but has not real[l]y made any money with this." (Tr. 665.) It is not appropriate penalize the plaintiff for attempting to work by making a negative credibility finding. "It does not follow from the fact that a claimant tried to work for a short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment."

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007). There is no evidence in the record about plaintiff's attempt to start an internet business other than the statement to Dr. Ashworth and the internet business was evidently not substantial gainful activity. As a result, this evidence does not support the finding that plaintiff's daily activities are inconsistent with his claims.

Defendant argues the ALJ also cited two other reasons for rejecting plaintiff's testimony: (1) objective medical evidence contradicted plaintiff's symptoms; and (2) plaintiff's symptoms improved with conservative treatment. (ECF No. 12 at 9-12.) However, the ALJ did not mention these reasons for the negative credibility finding. The court is constrained to review only those reasons asserted by the ALJ. *Sec. Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001). Defendant cites page 10 of the ALJ's decision (Tr. 30) to support these arguments, but that page is only a written summary of some the evidence in the record with no analysis or explanation of the ALJ's reasoning.[1] The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted). General findings are insufficient. *Id.* Therefore, these reasons do not support the credibility determination.

The ALJ failed to cite specific, clear and convincing reasons supported by substantial evidence to justify the negative credibility finding. As a result, the ALJ erred.

**2.    VA Decisions**

Plaintiff argues the ALJ improperly rejected the rating of the Veteran's Administration concerning plaintiff's disabilities and ability to work. (ECF No. 9 at 14-15.) In April 2013, the VA

---

[1] The ALJ did not cite other reasons for the credibility finding elsewhere in the decision.

found that effective November 8, 2010, plaintiff had a service-connected disability of 70% for PTSD with depressive features and panic disorder without agoraphobia and alcohol dependence.[2] (Tr. 703.) This finding was based on VA forms and records dated September 16, 2012 to April 24, 2013. (Tr. 703.) In September 2014, subsequent to the ALJ's April 2014 decision, the VA increased plaintiff's service-connected disability rating to 100% effective October 29, 2013. (Tr. 907.)[3] An ALJ must ordinarily give great weight to a VA determination of disability. *Berry v. Astrue*, 622 F.3d 1228, 1236 (9th Cir. 2010); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009); *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002).

The ALJ found the evidence does not justify adoption of the VA findings. (Tr. 31.) An ALJ may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record. *Id.* The first reason cited by the ALJ for rejecting the VA findings is that there is no evidence in the Social Security record of some of the factors which are the basis for the VA rating. (Tr. 31.) The basis for the 70% disability rating by the VA includes:

- occupational and social impairment, with deficiencies in most areas, such as work, school, family relationships, judgment, thinking or mood;

- difficulty in adapting to a worklike setting;

- difficulty in adapting to stressful circumstances;

---

[2] The VA decisions note plaintiff's diagnoses were claimed as PTSD, anxiety, anger, avoidance of people, trust issues, and prior alcohol usage. (Tr. 703, 907.)

[3] Plaintiff submitted the September 2014 VA determination to the Appeals Council which made it part of the record for review. (Tr. 1-5); *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).

- difficulty in adapting to work; impaired impulse control;

- inability to establish and maintain effective relationships;

- near-continuous depression affecting the ability to function independently, appropriately and effectively;

- near-continuous panic affecting the ability the ability to function independently, appropriately and effectively;

- unprovoked irritability with periods of violence;

- the VA examiner's assessment of mental functioning;

- difficulty in establishing and maintaining effective work and social relationships;

- disturbances of motivation and mood;

- chronic sleep impairment; and

- depressed mood.

(Tr. 864-65.) The ALJ concluded, "After the claimant stopped heavy alcohol use, the [Social Security] record does not show near-continuous depression and panic, poor impulse control, periods of violence, broad adaptation difficulties, and deficiencies in most social and occupational spheres." (Tr. 31-32.) In other words, because the ALJ did not find evidence of all of the reasons cited by the VA for the 70% disability rating in the Social Security record, the ALJ gave no weight to the VA rating. This reasoning is not persuasive.

Furthermore, the September 2014 VA rating of 100% disability includes a different list of factors:

- total occupational and social impairment;

- circumstantial speech;

- stereotyped speech;

- circumlocutory speech;

- difficulty in establishing and maintaining effective work and social relationships;

- panic attacks more than once a week;

- chronic sleep impairment;

- anxiety;

- suspiciousness; and

- depressed mood.

(Tr. 908-09.) The September 2014 100% disability rating was not reviewed by the ALJ because it was not yet part of the record. Because the basis of the VA findings for 100% disability were different than the findings for 70% disability reviewed by the ALJ, and because the 100% disability finding by the VA pertains to the period at issue,[4] it is necessary to remand for the ALJ to review the latest VA findings.

Another reason the ALJ cited for rejecting the VA findings is, "As discussed above, the claimant's daily activities have increased over time." (Tr. 32.) However, as discussed *supra*, the ALJ did not cite substantial evidence that plaintiff's daily activities are inconsistent with his claimed limitations. Further, the ALJ did not discuss or demonstrate that plaintiff's daily activities

---

[4] Defendant observes that plaintiff's Title II insured status expired in December 2011, well before the retroactive 2013 effective date of the VA's 100% disability rating. (ECF No. 12 at 17, n. 2.) Title II benefits are not payable unless disability is established before insured status expires. Notwithstanding, plaintiff also applied for Title XVI benefits which are payable from the first month disability is established after the application date, without regard to insured status. S.S.R. 83-20.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14

have increased over time. As a result, this reason for rejecting the VA rating is not persuasive or supported by the record.

The ALJ also rejected the VA findings because Dr. Toews testified the evidence did not support a diagnosis of post-traumatic stress disorder. (Tr. 32.) Dr. Toews testified:

> Now, I don't – unfortunately, the post traumatic stress disorder diagnosis is listed but there's nothing in the record whereby the – I would be able to certify that there is psychological support for that diagnosis. The MMPI would be regarded as unreliable, but possibly indicative. So, I cannot say for certain if he does have a post traumatic stress disorder. If in fact he did, and the basis for that would be the VA determination, he was eligible for 70 percent disability rating there would be – that would be some indication that he might have post traumatic stress disorder.

While Dr. Toews testified there is no psychological support for the PTSD diagnosis in the record other than the VA finding, his comments suggest that the VA finding may be based on evidence of post-traumatic stress disorder which was not part of the record. In fact, a January 2014 letter from Dr. Ashworth suggests there is a basis for the PTSD finding. (Tr. 902-03.) Dr. Toews' testimony suggests his opinion might change if he reviewed additional evidence supporting the PTSD diagnosis. As a result, the matter must be remanded for the ALJ to consider evidence submitted to the Appeals Council.

The ALJ's reasons for rejecting the VA 70% disability findings are not valid, persuasive and supported by the record. Furthermore, the second VA rating and Dr. Ashworth's letter are relevant and should be considered by the ALJ. On remand, the ALJ should reconsider the VA decisions and give great weight to the findings unless persuasive, specific, valid reasons supported by the record are provided.

**3.    Opinion Evidence**

Plaintiff argues the ALJ improperly evaluated the opinions of Dr. Thompson and Dr. Ashworth regarding the nature and extent of plaintiff's mental conditions. (ECF No. 9 at 15-16.)

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain as specific, legitimate reasons for disregarding a treating or examining physician's opinion. *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995); *Fair*, 885 F.2d at 604.

If a treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, if contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).

### a.    Dr. Thompson

Dr. Thompson examined plaintiff in September 2010 for a general assistance psychological evaluation. (Tr. 841-43.) She diagnosed depressive disorder, anxiety disorder, and alcohol dependence in remission by self report, and made "rule out" diagnoses of cognitive disorder and personality disorder. (Tr. 842.) Dr. Thompson assessed major limitations regarding plaintiff's

ability to interact appropriately in public and on plaintiff's ability to behave appropriately at work. (Tr. 842.) She also opined that plaintiff is not able to perform simple work-related tasks and is unable to work with coworkers and supervisors. (Tr. 843.)

The ALJ gave Dr. Thompson's opinion some weight because it is consistent with plaintiff's condition while using alcohol and recovering from heavy alcohol use. (Tr. 27.) However, the ALJ found Dr. Thompson's assessment did not address the effects of alcohol use. (Tr. 27.) Dr. Toews testified that before 2011 plaintiff had marked limitations due to alcohol use. (Tr. 70.) The ALJ therefore reasonably found that Dr. Thompson's opinion was impacted by plaintiff's alcohol use. Plaintiff's only argument is that the ALJ should have given more weight to Dr. Thompson's opinion because Dr. Thompson had the opportunity to interview plaintiff personally. (ECF No. 9 at 16.) This does not speak to the ALJ's reason for giving appropriate weight to the opinion. Plaintiff did not identify any other error or make any further argument with respect to the ALJ's analysis of Dr. Thompson's opinion. The court declines to further address this issue which was not argued with specificity. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). As a result, there is no error regarding Dr. Thompson's opinion.

**b.    Dr. Ashworth**

Plaintiff attended counseling sessions relatively regularly at New Alliance Counseling from 2010 through 2014. (Tr. 662-75, 693-702, 706-53, 780-797, 835-839, 844, 873-900.) Dr. Ashworth from New Alliance Counseling completed a DSHS Psychological/Psychiatric Evaluation form in January 2011. (Tr. 844-88.) He observed symptoms of marked anxiety with difficulty being around others and depression with decreased motivation. (Tr. 845.) Dr. Ashworth

assessed a GAF of 50[5] and diagnosed depressive disorder not otherwise specified; anxiety disorder, not otherwise specified, with features of post-traumatic anxiety; alcohol dependence, in remission; and rule out personality disorder not otherwise specified. (Tr. 845.) He assessed three moderate and two marked limitations. (Tr. 846.) Dr. Ashworth opined plaintiff is able to understand, remember and carry out simple work related instructions, but is not able to interact with coworkers and supervisors. (Tr. 847.)

In May 2011, Dr. Ashworth completed a second DSHS Psychological/Psychiatric Evaluation form. (Tr. 849-53.) Dr. Ashworth observed marked concentration and memory deficits and a severe panic/anxiety deficit. (Tr. 850.) He assessed a GAF of 45 and diagnosed anxiety disorder, not otherwise specific with panic and post-traumatic features; depressive disorder, not otherwise specified; substance abuse/dependence not otherwise specified; and rule out personality disorder, not otherwise specified. (Tr. 851.) Dr. Ashworth assessed three moderate and four marked limitations. (Tr. 851-52.) He opined that plaintiff is able to understand but possibly not remember and thus not carry out simple work related instructions, and that plaintiff would have difficulty interacting with coworkers and supervisors. (Tr. 852.)

Dr. Ashworth completed a third DSHS Psychological/Psychiatric Evaluation form in January 2012. (Tr. 855-58.) He noted symptoms of acute anxiety and panic and social avoidance and assessed a GAF of 50. (Tr. 855.) Diagnoses included anxiety disorder, not otherwise specified with features of post-traumatic anxiety, social avoidance, and panic; polysubstance dependence;

---

[5] A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupation, or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 4TH Ed. at 32.

depressive disorder not otherwise specified, by history; and personality disorder, not otherwise specified. (Tr. 855.) With regard to plaintiff's residual capacity, Dr. Ashworth opined that plaintiff is able to understand, remember, and carry out simple work related instructions, but would have difficulty interacting with coworkers and supervisors in a work setting. (Tr. 856.)

The ALJ noted the GAF ratings assessed by Dr. Ashworth in 2011 and 2012 and assigned little weight to all of them because "there is little explanation in the treatment notes for those ratings," "they are inconsistent with plaintiff's increased daily activities after he stopped using alcohol heavily," and the 2012 GAF was "inconsistent with the claimant's daily activities." (Tr. 31.) Clinicians use a GAF to rate the psychological, social, and occupational functioning of a patient. The scale does not evaluate impairments caused by psychological or environmental factors. *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 598 (9th Cir. 1999). The Commissioner has explicitly disavowed use of GAF scores as indicators of disability. "The GAF scale . . . does not have a direct correlation to the severity requirements in our mental disorder listing." 65 Fed. Reg. 50746-01, 50765 (August 21, 2000). Moreover, the GAF scale is no longer included in the DSM–V.[6] As a result, the ALJ's rejection of the GAF scores is appropriate, although not for the reasons cited.

The ALJ credited Dr. Ashworth's findings that plaintiff could perform simple, routine, repetitive tasks and would have difficulty working with coworkers and supervisors. (Tr. 31.) This

---

[6] "It was recommended that the GAF be dropped from the DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 5TH Ed. at 16.

translated into an RFC finding that plaintiff "can understand and remember simple instructions and complete simple routine tasks" and "should have only occasional, superficial, brief interactions with supervisors and co-workers." (Tr. 28.) Additionally, the ALJ included other psychological limitations in the RFC consistent with Dr. Ashworth's findings: "should not deal with the general public; should not work in an environment where he must make critical calls in the workplace; should not be in a job requiring a high degree of accuracy; can maintain a normal production pace and perform adequately; should have no over-the-shoulder supervision." (Tr. 28.) This is reasonably consistent with symptoms of anxiety, panic and social avoidance mentioned by Dr. Ashworth in the three DSHS evaluations. Plaintiff's only argument is that the ALJ "should have placed more weight on the opinions of [Dr. Ashworth] because [he] had the opportunity to personally interview plaintiff." (ECF No. 9 at 16.) This argument does not speak to the ALJ's analysis of Dr. Ashworth's findings or the reasons they were credited. The ALJs' findings regarding Dr. Ashworth's three DSHS opinions are reasonable and based on substantial evidence.

However, the ALJ did not have the opportunity to review all of the relevant evidence from Dr. Ashworth. As noted *supra*, in January 2014, Dr. Ashworth wrote a letter to the Veterans Administration summarizing plaintiff's treatment and diagnosis. (Tr. 902-03.) Dr. Ashworth indicated that plaintiff's diagnoses include posttraumatic stress disorder, chronic, with panic and agoraphobic features; dysthymic disorder; alcohol use disorder, moderate, in early remission; and other specified personality disorder with mixed personality features. (Tr. 903.) He opined that plaintiff's symptoms are severe and chronic and unlikely to improve in the foreseeable future. (Tr. 903.) According to Dr. Ashworth, plaintiff is unable to tolerate stressful circumstances due to symptoms such as "near-continuous panic affecting the ability to function independently,

1   appropriately, and effectively." (Tr. 903.) Dr. Ashworth indicated it is unlikely plaintiff would be

2   able to sustain substantial gainful employment in the future. (Tr. 903.)

3          The 2014 letter was submitted to the Appeals Council and is therefore part of the record on

4   review. (Tr. 5.) The ALJ rejected the VA 70% disability findings in part because of a lack of

5   evidence of PTSD and other symptoms (Tr. 31-32), but Dr. Ashworth's letter appears to be

6   consistent with the findings noted in the VA disability reports. (Tr. 704-05, 907-08.) Furthermore,

7   Dr. Ashworth explained the basis for his PTSD diagnosis and noted the results of several objective

8   tests specifically addressing PTSD. (Tr. 902.) Dr. Toews' testimony and the ALJ's finding that

9   there is no evidence of PTSD should be revisited on remand.

**CONCLUSION**

The ALJ's decision is not supported by substantial evidence and free of legal error. The matter must be remanded for reconsideration of the credibility finding, the VA decisions, and other evidence submitted to the Appeals Council. On remand, the ALJ should provide legally sufficient reasons for rejecting any testimony which is found to be not fully credible and for assigning less weight to any medical opinion or the VA findings. If necessary, the ALJ also should develop the record regarding posttraumatic stress disorder and take additional testimony as is appropriate.

**IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment **(ECF No. 9)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. 405(g).

2.      Defendant's Motion for Summary Judgment **(ECF No. 12)** is **DENIED**.

3.      An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for plaintiff and defendant. Judgment shall be entered for plaintiff and the file shall be **CLOSED**.

DATED this 17th day of March, 2016.

*s/Fred Van Sickle*
Fred Van Sickle
Senior United States District Judge

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 22